IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| KESHA LASHAWN BOGUS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:17-cv-00827-TMP |
| | ) | |
| CITY OF BIRMINGHAM, | ) | |
| ALABAMA, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION and ORDER**

The above-styled action was filed on May 19, 2017. (Doc. 1). On June 20, 2017, the City of Birmingham, the Birmingham Police Department, William A. Bell, Sr., Herman Harris, and Paul Irwin (collectively "defendants") filed a Motion to Dismiss or, in the Alternative, Motion for More Definite Statement. (Doc. 10). The motion has been fully briefed, and the parties have consented to dispositive jurisdiction by a United States Magistrate Judge in accordance with 28 U.S.C § 636(c).

### **STANDARD FOR ASSESSING A MOTION TO DISMISS**

Defendants contend that the Complaint should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim on which relief can be granted. Before the Supreme Court decided <u>Bell Atlantic v.</u>

Twombly, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), a court could dismiss a complaint only where it was clear that no relief could be granted under any set of facts that could be proved consistent with the allegations, as set forth in Conley v. Gibson, 355 U.S. 41, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957). The well-established Rule 12(b)(6) standard set forth in Conley was expressly rejected in Twombly when the Supreme Court examined the sufficiency of a plaintiff's complaint and determined:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requests more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

550 U.S. at 555 (citations omitted). The court went on to criticize Conley, stating that "[t]he 'no set of facts' language has been questioned, criticized, and explained away long enough" by courts and commentators, and "is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Twombly, 550 U.S. at 562-63. The

Supreme Court emphasized, however, that "we do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." 550 U.S. at 570.

The Supreme Court expanded on the Twombly standard when it decided Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949-50, 173 L. Ed. 2d 868 (2009), reiterating the Twombly determination that a claim is insufficiently pleaded if it offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Iqbal, 129 S. Ct. at 1949. The Court further explained:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief."

Iqbal, 129 S. Ct. at 1949-50 (citation omitted). See also Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252 (11th Cir. 2009) ("The mere possibility the defendant acted

unlawfully is insufficient to survive a motion to dismiss" and "the well-pled allegations must nudge the claim 'across the line from conceivable to plausible'" (quoting Iqbal and Twombly)).

## FACTS AS PLEADED IN THE COMPLAINT[1]

For the purposes of a motion to dismiss, the court must take as true the well-pleaded facts according to the nonmoving party; in this case, the plaintiff, Kesha LaShawn Bogus ("Bogus"). As discussed above, the court is not required to accept legal conclusions masquerading as facts. Accordingly, the following are the relevant facts:

Bogus is an African-American female, employed by the City of Birmingham, Alabama ("City"), as a police officer since 1996. (Complaint, ¶ 8). She currently holds the rank of sergeant, being promoted to that rank in 2015. (*Id.*). Beginning in 2010, the plaintiff was assigned to Mayor William Bell's security detail. (Complaint, ¶ 20). During the summer of 2014, while she was assigned to Mayor Bell's ("Bell") security detail, her supervisor became Sergeant Herman Harris ("Harris"), whom she identifies as Bell's cousin and fellow

---

[1] It should be observed that the complaint was drafted and filed for the plaintiff by an attorney, who has now withdrawn from representing her. This means, of course, that the liberal reading of the complaint a court must give a *pro se* pleading does not apply. Following the withdrawal of plaintiff's original counsel, the court unsuccessfully undertook to look for other counsel willing to represent the plaintiff. She now is *pro se*, which may implicate the reading of any future amended complaints that may be required.

fraternity member.  (Complaint, ¶ 23).  Soon thereafter, Harris began to pursue her romantically, but she rebuffed his advances.  (Complaint, ¶ 26).   Because she rejected his unwanted advances, Harris, known by Bell, denied her overtime duties and compensation, despite assigning male employees overtime duties and compensating those male employees accordingly.  (Complaint, ¶ 28).

During this same time period (late summer 2014), another city employee, April Odom, began making romantic overtures to Deputy Chief William Tubbs (Complaint, ¶ 29), with whom the plaintiff already was romantically involved. This led to a confrontation between Odom and the plaintiff outside a Logan's restaurant in Fultondale, a suburb north of Birmingham, in the presence of Deputy Chief Tubbs, Mayor Bell, and other members of the mayor's staff. (Complaint, ¶ 30).   As a result, Odom filed a "report" of the incident in September 2014, which led to an investigation of the plaintiff.  (*Id.*).  Rather than refer the report to the Internal Affairs Division ("IAD") of the police department, "outside counsel" Matt Beam was retained to conduct an investigation of the incident. (Complaint, ¶ 31).  In late September or early October 2014, the plaintiff heard that Odom might drop her complaint against the plaintiff.  Bogus contracted the City's Chief of Operations (Jarvis Patton) to request that the complaint not be dropped because she wanted a name-clearing hearing.  (Complaint, ¶ 39).

As part of this investigation by Beam, the plaintiff reported to him that she believed she was being subjected to discriminatory treatment by defendant Harris because she had rebuffed his "sexually harassing overtures." (Complaint, ¶ 33). Specifically, she told Beam that she was being denied overtime assignments while male employees (Jeffrey Wick and Eric Smith) were receiving overtime assignments. (Complaint, ¶34). Likewise, on October 9, 2014, Bogus mailed a letter to Harris, her supervisor, complaining that she was being discriminatorily denied overtime.

On October 13, 2014, after concluding that Odom's complaint against the plaintiff was unfounded, Beam dismissed it (Complaint, ¶ 32) and attempted to convince Bogus, Tubbs, and Odom to sign a release following the complaint's dismissal. (Complaint, ¶ 40). While Tubbs and Odoms signed a release, Bogus refused. She vaguely asserts that she suffered retaliation in the months following her refusal to sign the release. (*Id.*).

Bell became aware of Bogus's complaints, both by and against her, in October of 2014. On October 25, 2014, during a parade, Bogus claims that Bell called the male members of his security detail into his vehicle and raised his voice. Bell then summoned Bogus into the vehicle and commented: "I don't give a shit about your personal relationship [with Tubbs]. I know about the email you sent

saying that you were the only female in the unit. I know what that means."
(Complaint, ¶ 36).

Concurrent with the problems developing in her professional life, a tempest
soon began to develop in her personal life as well. Tubbs proposed marriage to
Bogus on September 23, 2014, despite being married,[2] and in October of 2014,
Bogus discovered that she was pregnant with Tubbs' child. Bogus and Tubbs
enjoyed a nice Christmas holiday before their relationship spiraled out of control.
During the New Year's holiday, Bogus entered Tubbs's apartment and "made an ...
inappropriate gesture to inform Tubbs that she was upset at the thought that he
might have been seeing another woman and had abandoned her [after] she became
pregnant." (Complaint, ¶ 51). Bogus further confronted Tubbs in his office at the
police department about her fears on January 2, 2015. (Complaint, ¶ 52).

Tubbs filed a complaint against Bogus on January 2, 2015, which he later
withdrew. Upon the filing of the complaint, the City immediately placed Bogus on
administrative leave. Apparently notwithstanding Tubbs' withdrawal of the
complaint, the investigation continued. As a result of the City's investigation,
Bogus "was substantially exonerated, but found to have engaged in conduct
unbecoming a police officer as a result of her having entered Tubbs' apartment and

---

[2]     Tubbs admittedly was in the process of divorcing his wife at the time of the engagement.

having made the gesture of fear and concern aforementioned."[3]  (Complaint, ¶ 56). The plaintiff was suspended for two days, removed her from Mayor's Bell security detail, and compelled her to attend counseling.[4]  (Complaint, ¶ 54).  Upon leaving the security detail, she was reassigned to the Community Resource Division and was deprived of her badge and gun during this period.  Her child was born on July 7, 2015, at which time she went on maternity leave pursuant to the Family Medical Leave Act ("FMLA") until October of 2015.

Tubbs himself also was subsequently charged with misconduct by the Internal Affairs Division ("IAD") (hereinafter referred to as the "Tubbs investigation"), and he took FMLA leave during the investigation.  Although the IAD concluded that Tubbs engaged in misconduct, he was allowed "to retire on a full pension" following the conclusion of his FMLA leave.  (Doc. 1, ¶ 57).[5]  Her "supervisor's attitudes toward her [had] changed markedly."[6]  (Doc. 1, ¶ 71).

---

[3]     The "gesture of fear and concern" is not otherwise described in the complaint.

[4]     Although not entirely clear from the complaint, it appears the IAD investigation was handled by Lt. David Grayson, or under his direction, as plaintiff alleges that it was Grayson who ordered her to attend counseling. (Complaint, ¶ 54).  Grayson is not named as a defendant in this action.

[5]     It is not clear from the complaint when Tubbs learned of the investigation's conclusion, when he took FMLA leave, and when he officially retired.  Additionally, the investigation was not formally closed until June of 2016.

[6]     Although the plaintiff alleges that she was not restored to her position on Bell's security detail because of her complaints regarding Harris and her refusal to execute a release in the

After these events, Bogus filed an Equal Employment Opportunity Commission ("EEOC") charge on March 31, 2015. She vaguely claims that she suffered retaliation in response to filing the charge and a later supplement to it. She alleges only that other members of Bell's staff and security detail engaged in more egregious, unbecoming conduct than she, but they were not subjected to punishment or prolonged investigation. When compared to these individuals, she claims that she was treated much worse by the City, Bell, and Harris. Bogus asserts that she would not have been subjected to discipline if she had not reported what she had seen while serving on the mayor's security detail.[7]

Bogus gave birth to Tubbs's child on July 7, 2015, and she was placed on maternity leave until October of 2015. She suffered from post-partum complications and general depression, and she was required to attend counseling. Following her return from maternity leave, the City promoted Bogus to sergeant in October 2015. Despite her promotion, Bogus alleges that, at least initially, none of the captains in charge of the City's four police precincts wanted Bogus under his command. She alleges "on information and belief" that this was because she had engaged in a relationship with a white former supervisor (Tubbs) and had given

---

Beam investigation, she admits that she does not know the reason she was not restored to the security detail. (Complaint, ¶ 72).

[7]    It is not clear from the complaint when Bogus made the reports concerning misconduct by Bell's staff or to whom she made the reports. She alleges only that she did so "in accordance with established procedure." (Complaint, ¶ 65).

birth to a bi-racial child. The City assigned her to the West Precinct under the command of Captain Paul Irwin ("Irwin") in October of 2015. After her assignment to the West Precinct, Bogus repeatedly applied for a shift accommodation to care for her young children. She alleges that she was not granted an accommodation for longer than six weeks, although several similarly situated employees, male and female, had received shift accommodations longer than six weeks. She alleges impliedly that she was denied accommodation because she:

> (1) refused to release the City of Birmingham from all liability for its prior wrongful actions; (2) … had… engaged in an inter-racial relationship; (3) … had… given birth to a bi-racial baby; (4) … had… been associated with the dismissal of a popular Deputy Chief; (5) … had… been witness or privy to significant irregularities within Bell's office, and (6) … had… been the subject of inappropriate gossip, rumor or "scuttlebutt".

(Complaint, ¶ 88). Bogus alleges that Irwin ignored her accommodation requests and "reports of racial unrest and other matters occurring within the West Precinct." (Doc. 1, ¶ 102). On November 18, 2015, Irwin suggested to Bogus that she "roll-back" her rank as sergeant "to that of officer in order that she might receive the same treatment as other police officers and supervisors had traditionally received." (Complaint, ¶ 97). She refused to do so.

Following these events, Bogus began to search for a new law enforcement job within the area, but her search has proven fruitless.

Bogus ultimately filed a supplement to her EEOC charge on January 19, 2016. She filed an additional complaint with the City, alleging a hostile work environment, and she was temporarily transferred to the South Precinct for six weeks while the investigation of her hostile-work environment complaint proceeded. Upon return to the West Precinct in May 2016, Bogus met with and informed Chief of Police A.C. Roper ("Roper") and Captain Theophilus Smith ("Smith") of her post-partum complications. Neither Roper nor Smith took her concerns seriously. Irwin then, at some point, omitted Bogus from the supervisor's email list, which kept her "out of the official loop . . . [of] important information regarding the daily operations of the West Precinct."[8] (Complaint, ¶ 102). She did not receive the information necessary to efficiently and effectively perform her job, which diminished "her stature as a supervisor in the West Precinct." (Complaint, ¶ 109). Bogus has subsequently attempted to regain her standing with Irwin and other officials within the City.

---

[8] In particular, the plaintiff alleges that as a result of being omitted from the email circulation, she was unaware of a dangerous, mentally-ill woman known to other supervisors in the West Precinct. Unaware that the woman was armed with a pistol, Bogus confronted her "on more than one occasion" before the woman was finally hospitalized. Plaintiff does not allege she suffered any injury due to these confrontations. (Complaint, ¶ 108).

## LEGAL CLAIMS ALLEGED

Based on these factual allegations, the plaintiff has identified eight counts for relief. Count I alleges that plaintiff suffered racial discrimination in employment in violation of Title VII of the Civil Rights Act of 1964. Count II asserts that she suffered pregnancy discrimination in violation of Title VII of the Civil Rights Act of 1964, including presumably (although not explicitly stated) the Pregnancy Discrimination Act. Count III alleges that plaintiff suffered from a racially and sexually discriminatory hostile work environment, in violation of Title VII of the Civil Rights Act of 1964.

Count IV of the complaint asserts that the plaintiff suffered employment related "retaliation." Although not as clearly stated as in the first three counts, this count also seems to rest on the anti-retaliation provisions of Title VII of the Civil Rights Act of 1964. In paragraph 129 of the count, for example, she alleges that she "was repeatedly denied accommodations on account of her race, gender, personnel history and opposition to the Defendants' discriminatory practices," which seems to invoke the prohibitions of Title VII. Furthermore, in the next paragraph, she explicitly states that she was "subject to retaliation for having filed a charge of discrimination" with the EEOC, as well as a complaint for "a hostile working environment claim against her superiors" with the Jefferson County Personnel Board. Lastly, in paragraph 131, the plaintiff alleges that she was

"denied accommodations" and subjected to "retaliation for her having raised legitimate concerns regarding the discrimination against her…." The court, therefore, reads Count IV to allege discriminatory retaliation under Title VII of the Civil Rights Act.[9]

Count V purports to allege claims for violation of the plaintiff's civil rights under 42 U.S.C. § 1983. In particular, she first alleges that she was deprived of property without due process of law in the form of "certain emoluments of her employment…, a property interest protected by the Fourteenth Amendment to the United States Constitution and made actionable by 42 U.S.C. §§1981 and 1983." (Complaint, ¶ 138). She focuses of the "Beam investigation" and "the IAD investigation." In the former, she alleges that she "was provided with no notice of or report of any 'hearing' nor any conclusion of any investigation conducted by Beam…," in violation of the rules and regulations of the police department. (Complaint, ¶ 142). Likewise, in relation to the IAD investigation, she alleges that "Harris and Bell provided Plaintiff with no notice of or report of any 'hearing' nor

---

[9] Only in ¶ 128 is there a hint of a claim for retaliation not related to Title VII employment discrimination. There the plaintiff alleges in conclusory manner that she suffered "arbitrary and capricious decision-making by her superiors in retaliation" because "she was a witness or privy to various instances of misconduct of elected or appointed public officials" of the City. Presumably, these are the instances of misconduct outlined in ¶ 66 of the complaint. Her complaint, however, never identifies what "arbitrary and capricious decisions" were the product of retaliation, except for Mayor Bell's verbal abuse during October 2014 and her removal from the security detail in January 2015, both of which are time-barred by the two-year limitation period applicable to § 1983 and § 1981 claims. All other allegations of retaliation in the complaint seem to be based on her complaints of racial and sexual discrimination under Title VII.

any conclusion of any investigation conducted by IAD…," in violation of the rules and regulations of the police department. (Complaint, ¶ 143).

Count V also asserts an alleged denial of due process with respect to a liberty interest. In sum, the plaintiff alleges that unnamed city officials made "improper and unauthorized disclosures," which were "false and misleading," about the matters involved in the two investigations of her, and that these disclosures caused the plaintiff to "suffer defamation of her character and [she] was stigmatized, which resulted in damage to her reputation and to her loss of future employment opportunities." (Complaint, ¶ 152). As a result of this defamation and stigmatization, Bogus "was caused to suffer the deprivation of liberty without due process of law in connection with the malicious damage to her good name and reputation and, thereafter, in the terms and conditions of her employment with the City of Birmingham…." (Complaint, ¶ 155). She alleges that she was entitled to a "name-clearing hearing" as a matter of due process.[10]

Count VII of the complaint[11] appears to rest on 42 U.S.C. § 1981, in that the plaintiff alleges that "[t]he actions of the Defendants subjected Plaintiff to

_____

[10]     At ¶ 146, the complaint also seems to allege a denial of equal protection because Harris denied plaintiff the same opportunities to earn overtime pay afforded to male members of the security detail. There is a separate count of the complaint alleging equal protection claims (Count VIII). In any event, because these events occurred prior to January 2015, when she was removed from the security detail, any claim for denial of equal protection based on these facts is time-barred, having occurred more than two years before the filing of the complaint.

[11]     There is no Count VI. The complaint skips from Count V to Count VII.

discrimination, harassment and retaliation because of her race, color, and gender within the meaning of 42 U.S.C. §1981, and Defendants' actions, therefore, constitute unfair employment practices against Plaintiff, for which they are liable in damages to her." (Complaint, ¶ 160). She asserts that she has lost "salary, overtime and other benefits, has been denied employment opportunities and advancement, present and future," and will continue to suffer emotional pain and anguish.

Count VIII turns to the theme of denial of equal protection actionable under 42 U.S.C. § 1983. She alleges that, as set out throughout the complaint, the defendants, jointly and severally, subjected her harassment, discrimination and retaliation based upon her race, color, gender and other illegitimate factors, resulting in loss of salary and benefits, loss of employment opportunities and advancement, and mental and emotional pain, distress, and anguish.

Finally, Count IX of the complaint purports to allege a claim under Alabama law for intentional infliction of mental anguish and emotional distress. She alleges specifically that Bell "verbally and vulgarly abused" her during the meeting in his car at the October 2015 parade. Further, she asserts that Irwin, knowing the physical and emotional difficulties she was having following the birth of her child, refused to give her a shift accommodation for longer than six weeks and he attempted to induce her to accept a reduction in rank. She also alleges that he

failed to keep her informed or reports and memoranda undermining her effectiveness as a sergeant and exposing her to a "life-threatening situation" involving an armed woman with a mental illness. Lastly, she alleges that Harris sexually harassed her and, when rebuffed, denied her valuable employment opportunities to earn overtime pay.[12]

## DISCUSSION

### I. Shotgun Pleading

As an initial matter, the defendants argue that Bogus's complaint constitutes an impermissible shotgun pleading. In Weiland v. Palm Beach Cty. Sheriff's Office, 792 F.3d 1313, 1321-23 (11th Cir. 2015), the Eleventh Circuit recognized that complaints violating either Federal Rules of Civil Procedure 8(a)(2) or 10(b) are "disparagingly referred to as 'shotgun pleadings.'" Shotgun pleadings fall into four categories:

---

[12] Because Bogus alleges specific actions by Bell, Irwin, and Harris, but says nothing about the City of Birmingham in this count, it appears that she is not attempting to allege this claim against the City. This, of course, is consistent with Alabama law, which makes a city liable only for the negligent and careless acts of its employees, not for their intentional torts. See Brown v. City of Huntsville, Ala., 608 F.3d 724, 743 (11th Cir. 2010) ("[U]nder § 11–47–190 [Code of Ala.], a city is liable for negligent acts of its employees within the scope of their employment, but not intentional torts of its employees."); see also White v. City of Birmingham, Ala., 96 F. Supp. 3d 1260, 1296 (N.D.Ala. March 27, 2015).

The most common type—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint. The next most common type, at least as far as our published opinions on the subject reflect, is a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief. Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against.

Weiland, 792 F.3d at 1321-23 (internal footnotes omitted).  Although the court recognizes that Bogus's complaint likely falls under the fourth category, the court declines to hold that Bogus's complaint is an impermissible shotgun pleading. Given the procedural context of the case, a dismissal or order to file a more definite statement under Rule 12(e) is inappropriate.  While the complaint was drafted by an attorney, Bogus is now *pro se*.  Ordering Bogus to redraft the complaint would likely prove futile.  Furthermore, the court believes that Bogus has alleged potential claims, which indicates that it is not in the interests of justice

to dismiss Bogus's complaint wholesale. Therefore, the defendant's motion to dismiss the complaint as an impermissible shotgun pleading is due to be denied.[13]

## II. Birmingham Police Department ("BPD") is not a Proper Defendant under any claim

The defendants argue that the BPD lacks the capacity to be sued. As a general matter, "police departments are not usually considered legal entities subject to suit." Dean v. Barber, 951 F.2d 1210, 1214 (11th Cir. 1992) (holding that police departments are not legal entities subject to suit under 42 U.S.C. § 1983). Under Federal Rule of Civil Procedure 17(b)(3), capacity to be sued is determined by the "law of the state where the court is located" for those parties who are not an individual or corporation. Under Alabama law, "departments and subordinate entities of municipalities, counties, and towns that are not separate legal entities or bodies do not have the capacity to sue or be sued in the absence of specific statutory authority. . . . Among subordinate entities generally lacking the capacity to sue or be sued separately are police departments. . . ." Ex parte Dixon, 55 So. 3d 1171, 1172 n.1 (Ala. 2010) (citing with approval 56 Am. Jur. 2d Municipal Corporations § 787 (2000)). Therefore, BPD is not a proper defendant subject to suit for any claim under 42 U.S.C. § 1983.

---

[13]    In Section VII, the court will briefly identify the surviving claims that Bogus may have. Bogus may object to the court's characterization of her claims within fourteen (14) days. If no objections are filed, the court and the parties will proceed on the claims identified in Section VII.

Although a police department might qualify as an "employer" under Title VII, 42 U.S.C. § 2000e *et seq.*, see <u>Dawson v. Henry Cty. Police Dep't</u>, 238 F. App'x 545 (11th Cir. 2007) and <u>Young v. Town of Fallsburg Police Dep't</u>, 774 F. Supp. 205, 207-8 (S.D.N.Y. 1991) (holding that police department is an employer and proper defendant in absence of naming the town as defendant), BPD is an agency of the City, and the City will satisfy any potential judgment against BPD, assuming *arguendo* that BPD is a proper employer. Yet, because Alabama law does not recognize a police department as a legal entity subject to suit and because the City has been named as a defendant in the above-styled, the City is the proper employer under Title VII and 42 U.S.C. § 1981, and conversely, BPD is not.

BPD therefore is not a proper defendant subject to suit under any of Bogus's claims and is due to be dismissed as a defendant from the above-styled action.

### III. Title VII Claims

#### A. Proper Defendants

As threshold matter for each cause of action under Title VII, the court must determine which defendants may properly be sued on which claims.[14] The defendants argue that the Title VII claims against Harris, Bell, and Irwin in their official and individual capacities should be dismissed. Bogus may pursue any

---

[14] This analytical approach equally applies to the other statutory claims contained in the various counts of Bogus's complaint.

claim for Title VII discrimination, hostile work environment, and retaliation against only the City as a defendant.

Although Bogus names Bell, Harris, and Irwin as defendants, in both their official and individual capacities, claims against these individuals under Title VII are improper. "Individual capacity suits under Title VII are . . . inappropriate. The relief granted under Title VII is against the *employer,* not individual employees whose actions would constitute a violation of the Act." Busby v. City of Orlando, 931 F.2d 764, 772 (11th Cir. 1991).[15] Bogus asserts that the City is her employer, meaning the claims against Bell, Harris, and Irwin in their individual capacities under Title VII are improper and are due to be dismissed.

Similarly, official capacity suits are "redundant and needlessly confusing." Lewis v. Bentley, No. 2:16-cv-690-RDP, 2017 WL 432464, at *3 (N.D. Ala. Feb. 1, 2017); see also Busby v. City of Orlando, 931 F.2d 764, 776 (11th Cir. 1991) ("Because suits against a municipal officer sued in his official capacity and direct suits against municipalities are functionally equivalent, there no longer exists a

---

[15]     Of course, to the extent plaintiff's Count VII alleges that the individual defendants violated her rights under 42 U.S.C. § 1981 by interfering with her employment contract with the City of Birmingham for racially discriminatory reasons, they remain proper defendants on that claim. See Zaklama v. Mt. Sinai Med. Ctr., 842 F.2d 291, 293 (11th Cir. 1988) (holding non-employer defendant liable for discriminatory dismissal of plaintiff by his employer under § 1981); Martinez v. Pavex Corp., 422 F. Supp. 2d 1284, 1291 (M.D. Fla. 2006) ("A defendant who is not a plaintiff's employer may therefore be liable under § 1981 for interference with the plaintiff's contractual rights with third parties.").

need to bring official-capacity actions against local government officials, because local government units can be sued directly").  Plaintiff's direct Title VII action against the City itself makes her claims against Bell, Harris, and Irwin in their official capacities unnecessary.  Because Bogus has brought Title VII claims against the City, there is no need to have duplicative Title VII claims against Bell, Harris, and Irwin in their official capacities.

Accordingly, Counts I, II, III, and IV, insofar as they are alleged Title VII claims against Bell, Harris, and Irwin individually or in their official capacities, are due to be dismissed.

### B.  Statute of Limitations

Because she filed her EEOC charge of discrimination on March 31, 2015 (see doc. 3-1), Title VII claims based on any discriminatory, hostile, or retaliatory actions by the City that occurred prior to October 2, 2014, are time-barred because such actions were outside the 180-day time limit for the filing of her EEOC charge. See 42 U.S.C. § 2000e-5(e)(1); Jordan v. City of Montgomery, 283 F. App'x 766, 767-68 (11th Cir. 2008).[16]  Subject to equitable doctrines, such as tolling and

---

[16]    The defendants have not advanced any argument that the plaintiff's parallel employment-discrimination claims under 42 U.S.C. § 1981 are time-barred.  The statute of limitation for asserting a § 1981 claim in Alabama is two years after the plaintiff "'knows or reasonably should know that the discriminatory act has occurred, the same point from which the Title VII 180-day limitations period runs.'"  See Stafford v. Muscogee Cty. Bd. of Educ., 688 F.2d 1383, 1390 (11th Cir. 1982) (quoting McWilliams v. Escambia County School Board, 658 F.2d 326, 330 (5th Cir. 1981).  Because none of the defendants has raised this issue, plaintiff's § 1981 claims will proceed against the City and the individual defendants in their *personal* capacities only.

estoppel, Title VII requires an aggrieved employee to file a charge of discrimination with the EEOC within 180 days after the discrete event of discrimination or retaliation. See National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 113, 122 S. Ct. 2061, 2072, 153 L. Ed. 2d 106 (2002). Failure to do so can be raised as an affirmative defense by the defendant employer. See Moore v. Alabama State Univ., 945 F. Supp. 235, 240 (M.D. Ala. 1996) (holding that180-day time bar is a matter to be raised as an affirmative defense).[17] Any discrimination, hostile work environment, or retaliation claim based on events occurring after the filing of her EEOC charge on March 31, 2015, had to be included in her January 19, 2016, Supplement to her EEOC charge, no more than 180 days after the occurrence of the event, unless such events were reasonably related to the original 2015 charge. Thus, allegedly *discrete* discriminatory or

---

[17]    Although the time limits required by Title VII are in the nature of affirmative defenses, the court may consider any such defense that appears on the face of the complaint. Because the instant matter is before the court on a motion to dismiss, the defendant City has not yet filed an answer in which to assert the affirmative defense. Nevertheless, time bars appearing on the face of the complaint itself (without reference to any extrinsic materials) may be considered on a Rule 12(b)(6) motion. See Quiller v. Barclays Am./Credit, Inc., 727 F.2d 1067, 1069 (11th Cir. 1984), on reh'g, 764 F.2d 1400 (11th Cir. 1985) ("[A] complaint may be dismissed under Rule 12(b)(6) when its own allegations indicate the existence of an affirmative defense, so long as the defense clearly appears on the face of the complaint.") (citing Concordia v. Bendekovic, 693 F.2d 1073 (11th Cir.1982); Mann v. Adams Realty Co., 556 F.2d 288, 293 n. 6 (5th Cir.1977)); see generally 5 C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE § 1357 (1969).

retaliatory actions by the City occurring after the filing of the March 2015 charge but before July 23, 2015, would be time barred as well.

Notably, in National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 117 (2002), the Supreme Court held that

> [a] hostile work environment claim is composed of a series of separate acts that collectively constitute one "unlawful employment practice." 42 U.S.C. § 2000e–5(e)(1)....  It does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period.  Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.

See also Shields v. Fort James Corp., 305 F.3d 1280, 1282 (11th Cir. 2002) (quoting with approval National Railroad Passenger Corp., 536 U.S. at 117)).  "Put simply, if the smallest portion of that [hostile work environment] "practice" occurred within the limitations time period, then the court should consider it as a whole."  Id.  Therefore, any actions attributable to the hostile work environment may be considered as long as some part of the action occurred during the time limitations discussed above.

As applied to the facts alleged in the complaint, the 180-day time limit cuts off any claims arising from Harris's romantic overtures to the plaintiff during the summer of 2014.  Insofar as these "overtures" by Harris created any sexually harassing hostile work environment, the complaint alleges that it ended in

September 2014, and thus was more than 180 days prior to the filing of the EEOC charge of discrimination.  Accordingly, this particular Title VII claim arising from Harris's actions fell outside of the deadlines discussed herein and is barred by the 180-day filing requirement of Title VII.  This particular Title VII claim is due to be dismissed.

## IV.   42 U.S.C. § 1983 Claims

### A.  *Proper Defendants*

The defendants argue that (1) the holding in <u>Monell v. Department of Social Services of City of N.Y.</u>, 436 U.S. 658 (1978), prevents any suit under § 1983 against the City from proceeding, and (2) that the official capacity suits against Harris, Bell, and Irwin are redundant of the suit against the City.  Therefore, defendants assert that the § 1983 claims brought against the City and Harris, Bell, and Irwin in their official capacities are due to be dismissed.

### (1)  <u>The City as a § 1983 Defendant</u>

Although Bogus may sue the City directly under § 1983, the City cannot be held vicariously liable for the actions of its employees under a theory of *respondeat superior*.  <u>Monell</u>, 436 U.S. at 690-91.  In other words, the City may not "be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort."  <u>Id.</u> at 691; <u>see also</u> <u>Skop v. City of Altanta,</u>

Ga., 485 F.3d 1130, 1145 (11th Cir. 2007).  To establish § 1983 municipality liability, Bogus must prove: "(1) that [her] constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004).  "In order for a plaintiff to demonstrate a policy or custom, it is 'generally necessary to show a persistent and wide-spread practice.'"  Id. at 1290.

As discussed above, Bogus has alleged three essential § 1983 claims: (1) that she was denied procedural due process of law with respect to deprivation of a property interest in her employment "benefits and emoluments," (2) that she was denied equal protection in the assignment of employment opportunities based on her sex, and (3) that she was denied due process of law with respect deprivation of a liberty interest in her good name and reputation.  In each of these instances, the plaintiff alleges that whatever action occurred took place was part of and pursuant to longstanding City practice and procedures.  At least as alleged in the complaint, the Beam and IAD investigations were authorized by and pursuant to City policy and practice, and thus were the actions of the City.  The City can be held liable for violations of the plaintiff's constitutional rights (if any) that occurred during or as a result of these authorized and official disciplinary investigations.  Likewise, the plaintiff alleges that the assignment of overtime opportunities was delegated by the

City to the plaintiff's supervisor (Harris); the City authorized the supervisor to assign such overtime opportunities as the plaintiff complains she was denied in violation of equal protection. Hence, the assignment of overtime opportunities was pursuant to City policy, practice, or custom for purposes of potential § 1983 liability.

Even though the complaint alleges due process and equal protection claims for which the City might be a proper defendant, the court will explain below that these claims are all time-barred. The City's failure to provide appropriate due process hearings and to not discriminate in the assignment of overtime-earning opportunities all were fully accrued well more than two years prior to the filing of this complaint. For this reason, the due process and equal protection claims against the City under § 1983 are due to be dismissed.

(2) Official Capacity Claims against Harris, Bell, and Irwin

Bogus may not proceed against Harris, Bell, or Irwin in their official capacities under § 1983. An official capacity suit under § 1983 "is considered a suit against the local government entity he represents." McElroy v. City of Birmingham, Ala., 903 F. Supp. 2d 1228, 1242 (N.D. Ala. 2012). As the Supreme Court explained in Kentucky v. Graham, "Official-capacity suits… 'generally represent only another way of pleading an action against an entity of which an officer is an agent.' As long as the government entity receives notice and an

opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." Kentucky v. Graham, 473 U.S. 159, 165–66, 105 S. Ct. 3099, 3105, 87 L. Ed. 2d 114 (1985) (quoting Monell v. New York City Dept. of Social Services, 436 U.S. 658, 690, n. 55, 98 S. Ct. 2018, 2035, n. 55, 56 L.Ed.2d 611 1978)); see also Busby v. City of Orlando, 931 F.2d 764, 776 (11th Cir. 1991). Therefore, "[w]hen suit is also filed against the local government entity, the court should dismiss the individual defendant in [their] official capacity[ies] as 'redundant and possibly confusing to the jury.'" Id. Furthermore, because official capacity suits are considered another way of suing the local government entity, official capacity suits necessarily fail, by implication, when a suit against the local government entity has been foreclosed upon. See id. Thus, because the City is a named defendant in this action, any claims under § 1983 against Harris, Bell, or Irwin in their official capacities are due to be dismissed as redundant of the claims against the City. As a result, Bogus may proceed against Harris, Bell, and Irwin under § 1983 only in their individual capacities.

### B. Claim of Deprivation of Property Without Due Process

Bogus appears to identify two instances in which she was denied procedural due process of law by the defendants with respect to a claimed property interest.[18]

---

[18] Because the plaintiff complains about the deprivation of a property interest in her employment, the court understands this claim to allege a denial of *procedural* due process of law, not substantive due process.

First, she asserts that she was denied due process during the Beam investigation in September and October of 2014. Second, she claims that she was denied due process during the IAD investigation in January of 2015. The City, Harris, Bell, and Irwin argue that each of these claims is time-barred.

Because § 1983 claims are tort actions, the statute of limitations for such claims is borrowed from the state where the claim is brought. Powell v. Thomas, 643 F.3d 1300, 1303 (11th Cir. 2011). Bogus brought this action in Alabama, which has a two-year residual statute of limitations for tort claims, which has been construed to apply to § 1983 claims. Ala. Code § 6-2-38(l); see also Jones v. Preuit & Maudlin, 876 F.2d 1480, 1483 (11th Cir. 1989). Therefore, a two-year statute of limitations applies to any claim under § 1983. Importantly, though, federal standards determine when § 1983 claims accrue, and a claim under § 1983 "accrue[s] when the plaintiff knows or has reason to know of the injury which is the basis of the action." Corn v. City of Lauderdale Lakes, 904 F.2d 585, 588 (11th Cir. 1990).

The procedural due process claim arising out of the 2014 Beam investigation is time-barred.[19] Because Beam concluded his investigation of the Odom

---

[19] It should also be noted that plaintiff suffered no deprivation of a property interest in the Beam investigation. The plaintiff acknowledges that Beam exonerated her with respect to the Odom complaint. She did not suffer any loss of pay or benefits or suffer a disciplinary punishment as a result of the investigation. To the extent the plaintiff complains she was denied a "name clearing" hearing as a form of deprivation of a *liberty* interest, that will be discussed

complaint in October of 2014, any potential liability for the 2014 Beam investigation accrued at that time, meaning the statute of limitations would have started to run and then expired at the latest in October of 2016. Bogus had notice of any wrongdoing in the investigation process and the subsequent conclusion of the investigation when Beam requested Bogus to sign a release on or around October 13, 2014. She cannot now ground a claim under § 1983 on conduct occurring more than two years prior to the filing of the complaint in this action.

The same is true of the IAD investigation that began in January 2015. Although it is not clear from the record[20] when Bogus received notice of the *conclusion* of the IAD investigation of her, it is clear that she suffered the deprivations of property in January 2015. Upon Tubbs filing a complaint against her on January 2, 2015, she was placed on administrative leave immediately, removed from Mayor Bell's security detail, and received a two-day suspension at that time. While it may be unclear from the record when Bogus learned that IAD had concluded its investigation of her, she acknowledges that she knew of the proceedings no later than March 2015, when she filed her EEOC charge of discrimination. Because she waited until May 2017 to commence her action, the two-year limitation for § 1983 actions had expired with respect to any property-

below. Thus, even if not time-barred, her procedural due process claim related to the Beam investigation of the Odom complaint is meritless on the face of the complaint itself

[20]    Notably, the defendants failed to argue that Bogus did not state a plausible claim as required by Fed. R. Civ. P. 12(b)(6).

interest deprivation arising from her two-day suspension and reassignment in January 2015. This due process claim also is due to be dismissed.

## C. *Claim for Deprivation of a Liberty Interest Without Due Process*

In connection with both the Beam and the IAD investigations, the plaintiff asserts that she was denied a "name-clearing" hearing, thus depriving her of a liberty interest in her good name and reputation without due process of law.[21] For the reasons explained above, these claims also are time-barred by the two-year limitation period applicable to § 1983 claims. Plaintiff admits that the Beam investigation, in which she was *exonerated*, was completed in October 2014. Further, in the complaint, she pleaded that she became the subject of an IAD investigation in January 2015, although she also asserts that she was never given a Form 466, upon which she could appeal the findings of the IAD investigation.

As set out in the complaint, the essence of her claim to a name-clearing hearing is that Tubbs, "while serving in the capacity of Deputy Chief of Police, [made] disparaging statements to individuals within the police department regarding the Plaintiff and [that Plaintiff] was found to have engaged in conduct unbecoming an officer as a result thereof." (Compl., Doc. 1, ¶ 149). She alleges that she discovered the fact of these disparaging remarks only when she obtained

---

[21]    As noted earlier, she alleges that Beam exonerated her with respect to the Odom complaint against her. Even assuming she was entitled to and deprived of a name-clearing hearing, she suffered no loss of a liberty interest because she was exonerated. The exoneration accomplished the same, if not more, than a name-clearing hearing could accomplish. She suffered no loss of reputation or good name. This claim is meritless on its face.

her EEOC notice of right to sue in February 2017. She asserts that she "was not notified of Tubbs' disparagement until long after the City became aware of it, and was not accorded the name-clearing hearing she had requested…." Further, she alleges that "the gossip and rumors that had been permitted by City officials, and proliferated overtly and by their silence and secrecy, were caused to fester and further damage the Plaintiff's good name and reputation." As a result, the complaint asserts that "Plaintiff was caused to suffer defamation of her character and was stigmatized, which resulted in damage to her reputation and to her loss of future employment opportunities." (Compl., Doc. 1, ¶ 152). She alleges that the four captains in charge of the four police precincts were given "selective disclosures" of information developed during the Beam and IAD investigations, causing her to suffer "malicious damage to her good name and reputation," as well as "unwarranted difficulty in finding new employment and lost future job responsibilities…." Compl., Doc. 1, ¶¶ 155-156).[22]

The plaintiff's allegations that she did not know about Tubbs' disparaging statements about her until February of 2017 is implausible on the basis of the facts alleged by her in the complaint. She admits that she knew Tubbs filed a complaint against her in January 2015, and that this resulted in her being placed on

---

[22] While the court doubts these allegations state a plausible claim for denial of procedural due process in the form of a name-clearing hearing, the defendants have not moved to dismiss the claim for failure to state a claim under Rule 12(b)(6). Their only argument is that it is time barred.

administrative leave pending the completion of the investigation, receiving a two-day suspension, being removed from Mayor Bell's security detail, and being ordered to undergo counseling. As mentioned above, she was aware of these facts no later than March 2015, when she filed her EEOC charge of discrimination. (*See* EEOC Charge, Ex.1 to Compl., doc. 3-1). Her claim to a name-clearing hearing, if she was entitled to one, fully accrued and was known to her well more than two years prior to filing of this action. A due process claim based on this allegation that Tubbs made disparaging statements is now time-barred.

Turning to the allegation that City officials allowed and even engaged in gossip and rumor-mongering about the investigations of the plaintiff, the defendants contend that the City cannot be liable because there is no allegation that such gossip and rumor mongering were the product of City policy, practice, or custom. Also, they assert that the individual defendants, Bell, Irwin, and Harris, are entitled to qualified immunity on this claim. To the extent they rely on the time-bar argument, the plaintiff alleges these disclosures occurred when she returned from maternity leave in October 2015, which is less than two years before the filing of suit in May 2017 and so, to the extent she would be entitled to a name-clearing hearing, the claim is not time barred.

The court agrees that the complaint has not alleged a factual basis for asserting that gossip and rumor-mongering allowed and engaged in by City

officials was official policy, practice, or custom of the City for purposes of extending liability to the City under Monell v. Dep't of Social Services, 436 U.S. 658 (1978). Indeed, the complaint repeatedly alleges that such gossip and rumor mongering was *contrary* to stated police department and City policy. In order for the City to be liable for failing to supply a name-clearing hearing, it must be an official act of the City that creates the stigmatization the plaintiff complains about.[23] The City is not responsible for the private acts of gossiping and rumor mongering among its employees unless those acts are the direct product of official government policy or practice, and that simply is not alleged here. Thus, the City had no duty to provide a name-clearing hearing as alleged in this due process claim.

As to the individual defendants, Bell, Irwin, and Harris, the complaint sets out no factual allegations whatsoever that they allowed or engaged in such gossiping and rumor-mongering. She does not allege that "selective disclosures" were made by any of these individual defendants. From the complaint, there is no reason to believe that either Mayor Bell or Sergeant Harris had access to the

---

[23]     See Buxton v. City of Plant City, Fla., 871 F.2d 1037, 1042–43 (11th Cir. 1989) (holding that the elements of a due process claim for deprivation of a liberty interest in good name and reputation are "(1) a false statement (2) of a stigmatizing nature (3) attending a governmental employee's discharge (4) made public (5) *by the governmental employer* (6) without a meaningful opportunity for employee name clearing." (italics added and internal footnotes omitted)), citing Board of Regents v. Roth, 408 U.S. 564, 573, 92 S. Ct. 2701, 2707, 33 L.Ed.2d 548 (1972).

investigative materials and files, and, while she alleges that Captain Irwin became aware of the investigative matters, she does not allege that he made any disparaging disclosures himself. He was the receiver of the information, not the disseminator of it. Moreover, even if these individual defendants were involved in making "selective disclosures" about her, they personally had no constitutional duty to provide her with any type of name-clearing due process hearing. Such would be the responsibility of the governmental employer, not the plaintiff's co-employees. Thus, the complaint fails utterly to allege any factual basis whatsoever for asserting this due process claim against these individual defendants.

Additionally, the individual defendants assert that they are entitled to qualified immunity on this claim. The court agrees. Qualified immunity requires Harris, Bell, and Irwin to first establish that they were performing discretionary functions. Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1264 (11th Cir. 2004). A discretionary function is one that is "of a type that [falls] within the employee's job responsibilities." Id. at 1265. To determine whether the defendants were engaged in a discretionary function, Harris, Bell, and Irwin must have performed "a legitimate job-related function (that is, pursuing a job-related goal)" and must have performed that function "through means that were within [their] power to utilize[,]" i.e., in an authorized manner. Id. at 1265-66. To determine whether a defendant was "engaged in legitimate a job related function,"

the court does "not ask whether it was within the defendant's authority to suspend an employee for an improper reason; instead, [the court asks] whether [the defendant's] discretionary duties included the administration of discipline." Id. at 1266 (internal citation and quotation marks omitted). "Each government employee is given only a certain 'arsenal' of powers with which to accomplish her goals." Id. at 1267.

Assuming that the plaintiff has alleged sufficiently that the Bell, Harris, and Irwin allowed or engaged in gossiping about her, or that they made "selective disclosures" about the investigations of her, she must concede that they acted within their duties and functions as City officials. If they did not, if they acted only in a purely private capacity, they cannot be sued under § 1983 because they would not have acted "under color of state law." Thus, in order to attempt to state a claim against them, the plaintiff must concede that they acted within the discretionary functions of their positions with the City. Harris, Bell, and Irwin undoubtedly exercised discretion in deciding, as supervisors, how to enforce the City's policy of prohibiting the proliferation of gossip. Even if Harris, Bell, and Irwin may have potentially exercised their discretion "in an unconstitutional manner[,]" that exercise "does not change the fact that [they were] fulfilling a legitimate job-related function." Holloman, 370 F.3d at 1267.

After it is determined that the individual defendants acted within their discretionary functions, the first question the court must address in relation to the assertion of qualified immunity is whether the actions of the defendants as alleged by the plaintiff violated a constitutional right. <u>See</u> <u>Mullenix v. Luna</u>, ___U.S. ___, 136 S. Ct. 305, 313-14, 193 L. Ed. 2d 255 (2015) (When addressing the defense of qualified immunity, "[f]irst, the court considers whether the officer in fact violated a constitutional right.") (Sotomayor, J., dissenting); <u>Keating v. City of Miami</u>, 598 F.3d 753, 762 (11th Cir. 2010) ("The court must determine 'whether [the] plaintiff's allegations, if true, establish a constitutional violation.'" (quoting <u>Hope v. Pelzer</u>, 536 U.S. 730, 736, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002))). Qualified immunity has two elements: first, whether a constitutional right was violated and, second, whether the constitutional right violated was "clearly established." Although holding that there is no rigid sequence in which these two issues must be addressed, the Supreme Court in <u>Pearson v. Callahan</u> reiterated:

> First, a court must decide whether the facts that a plaintiff has alleged (see Fed. Rules Civ. Proc. 12(b)(6), (c)) or shown (see Rules 50, 56) make out a violation of a constitutional right. Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was "clearly established" at the time of defendant's alleged misconduct.

<u>Pearson v. Callahan</u>, 555 U.S. 223, 232, 129 S. Ct. 808, 815–16, 172 L. Ed. 2d 565 (2009) (citing <u>Saucier v. Katz</u>, 533 U.S. 194, 121 S. Ct. 2151, 150 L. Ed. 2d 272

(2001), overruled in part by <u>Pearson v. Callahan</u>, 555 U.S. 223 (2009)). Thus, inherent in the analysis of qualified immunity is the assessment of whether a constitutional right has been violated.

Bogus has not plausibly demonstrated that Harris, Bell, or Irwin violated a constitutional right because there was not a right to violate. <u>See</u> <u>Cannon v. City of West Palm Beach</u>, 250 F.3d 1299, 1303 (11th Cir. 2001). Stigmatization by the government, standing alone, does not violate of the Fourteenth Amendment Due Process Clause. <u>Paul v. Davis</u>, 424 U.S. 693, 694 (1976). Under <u>Paul</u>, Bogus must claim stigmatization "'plus' the violation of some more tangible interest before the plaintiff is entitled to invoke the procedural protections of the Due Process Clause." <u>Cannon</u>, 250 F.3d at 1302. The Eleventh Circuit requires "'discharge or more' . . . in order to satisfy the 'plus' element of the stigma-plus test. A transfer or a missed promotion is not enough." <u>Id.</u> at 1303.

Here, Bogus has failed to establish a "loss of income or rank" or "discharge or more" in order satisfy the stigma-plus test. <u>See</u> <u>Cannon</u>, 250 F.3d at 1303. Irwin's denial of a shift accommodation and Harris's denial of overtime work and Bell's decision to reassign Bogus do not rise to the level of a "discharge or more." Bogus has not plausibly demonstrated how she suffered a loss of income;[24] in fact,

---

[24]     Although Bogus vaguely alleges that she "lost salary" in her complaint, she does not sufficiently allege that her income rate was lowered by the City. (<u>See</u> doc. 1, ¶¶ 121.e., 161, 167). She has not pleaded facts setting forth her income level at various points during her tenure

Bogus acknowledges that she ultimately received a promotion to the rank of sergeant in October of 2015. Because Bogus cannot point to the existence of a due process right in this situation, Harris, Bell, and Irwin have not violated her due process rights to a name-clearing hearing. Moreover, such a right to a name-clearing hearing in these circumstances (where the plaintiff suffered no loss of rank or income) was not clearly established under the second element of qualified immunity. Therefore, Harris, Bell, and Irwin in their individual capacities are entitled to qualified immunity, and the stigmatization claim under § 1983 is due to be dismissed.

### D. *Claim for Denial of Equal Protection*

Finally, the plaintiff appears to attempt to equal protection claims in two places in the complaint. First, she alleges as part of Count V, seeking relief pursuant to § 1983, that Harris violated her equal protection rights by denying her opportunities to earn overtime compensation that were made available to male members of Mayor Bell's security detail. Second, in a completely separate Count VIII, she alleges in very general and conclusory terms that, as a public

---

with the City that would reveal any loss of income. Bogus has not alleged that the reassignment from Bell's security detail to an administrative position actually resulted in the reduction of her pay rate. Furthermore, being deprived of the opportunity to earn overtime compensation is not the same as suffering a loss of income; no employee has a guaranteed right to earn overtime compensation. Finally, Bogus received a promotion to sergeant in October of 2015, which presumably included a raise in salary. (See doc. 1, ¶ 172, where Bogus alleges that Irwin "attempted to induce [Bogus] to accept a reduction in . . . rank and salary" for the proposition that the promotion came with a salary increase). Bogus does not sufficiently allege that her salary was reduced at any point during her assignment to the West Precinct.

employee of the City, "Defendants subjected [her] to harassment, discrimination and retaliation based upon her race, color, gender and other illegitimate factors hereinabove set forth." (Compl., doc 1, ¶ 164). The defendants' motion raise two arguments: one, that Count VIII is too vague to answer and, two, that many of the events referenced in the count occurred more than two years prior to the filing of the complaint and are time-barred.

The court agrees that many potential claims for denial of equal protection based on race, color, and gender are time-barred. As already discussed above, the statute of limitation for pleading claims under § 1983 for violation of constitutional rights is two years. As the complaint was filed on May 19, 2017, any event involving a denial of equal protection occurring prior to May 19, 2015, is time barred by the statute of limitation. For example, Bogus was removed from Bell's security detail in January of 2015 (which is, by implication, was the last month Harris could have denied Bogus the opportunity to earn overtime compensation), so that potential liability for the denial of opportunities to earn overtime compensation was fully accrued no later than then. Likewise, any § 1983 claims based on events described in Bogus's March 2015 EEOC charge are also time-barred, as she necessarily was aware (or should have been aware) of such claims at that time, but did not file her complaint until more than two years later. The statute of limitations has expired on any equal protection claim that accrued before

May 19, 2015. Therefore, any equal protection claim accrued before May 19, 2015, is hereby dismissed as time barred. Those not fully accrued until May 19, 2015, or later remain pending.

## V.  42 U.S.C. § 1981 Claim of Race Discrimination in Contract

For the same reasons discussed more fully in Section IV.A, above, the official capacity suits brought against Harris, Bell, and Irwin are due to be dismissed because the City has been named as a defendant. See McElroy, 903 F. Supp. 2d at 1242. It would be redundant to allow the official capacity suits to proceed and was potentially cause confusion. The § 1981 claims against them, however, remain pending. See Zaklama v. Mt. Sinai Med. Ctr., 842 F.2d 291, 293 (11th Cir. 1988) (holding non-employer defendant liable for discriminatory dismissal of plaintiff by his employer under § 1981); Martinez v. Pavex Corp., 422 F. Supp. 2d 1284, 1291 (M.D. Fla. 2006) ("A defendant who is not a plaintiff's employer may therefore be liable under § 1981 for interference with the plaintiff's contractual rights with third parties.").

## VI.  Intentional Infliction of Emotional Distress Claim

Bogus appears to identify several incidents that she alleges caused her severe emotional distress, for which she seeks a remedy under Alabama law:  (1) Harris's

unwanted romantic advances towards her; (2) Bell's profane verbal abuse during the October 2014 parade; (3) Bell's decision to suspend and then transfer her from his security detail; (4) irregularities in the 2014 Beam investigation and 2015 Tubbs investigation that led to her stigmatization; (5) Irwin's denial of a shift accommodation, his decision to exclude her from the supervisor's email list and circulated reports, and his attempt to induce her to accept a reduction in rank and salary. The defendants argue that these incidents do not constitute extreme and outrageous conduct.

To recover for intentional infliction of emotional distress, which is also known as the tort of outrage, Bogus must prove "that the defendant's conduct (1) was intentional or reckless; (2) was extreme and outrageous; and (3) caused emotional distress so severe that no reasonable person could be expected to endure it." Green Tree Acceptance, Inc. v. Standridge, 565 So. 2d 38, 44 (Ala. 1990); see also Buckentin v. SunTrust Mortg. Corp., 928 F. Supp. 2d 1273, 1287 (N.D. Ala. 2013). The defendants' conduct "must be so extreme in degree as to go beyond all possible bounds of decency and be regarded as atrocious and utterly intolerable in a civilized society." Id. Bogus cannot recover for "mere insults, indignities, threats, or annoyances, petty oppressions, or other trivialities." American Road Service Co. v. Inmon, 394 So. 2d 361, 364-65 (Ala. 1980). Typically, the tort of outrage can be supported only in three circumstances: "(1) wrongful conduct in

the family-burial context . . .; (2) barbaric methods employed to coerce an insurance settlement . . .; and (3) egregious sexual harassment. . . ."  Wilson v. Univ. of Ala. Health Services Found., P.C., __ So. 3d __, 2017 WL 6397654, at *3 (Ala. Dec. 15, 2017).  However, the tort of outrage is not limited to just those three categories.  Id.  In O'Rear v. B.H., 69 So. 3d 106 (Ala. 2011), *abrogated on other grounds by* Ex parte Vanderwall, 201 So. 3d 525 (Ala. 2015), the Alabama Supreme Court extended the tort of outrage to encompass a family physician's conduct of prescribing addictive medications to a boy, who subsequently became addicted, in exchange for sexual favors when the boy was struggling with the stress of his parents' divorce.

Here, Bogus has failed to allege facts sufficient to state a plausible claim that the defendants engaged in extreme and outrageous conduct.  Neither the gossip Bogus endured nor the alleged irregularities in the investigations rise to the harm caused by the conduct identified in the three categories in Wilson or in O'Rear. Additionally, neither Bell's verbal lashing during the October 2014 parade nor his decision to suspend and transfer Bogus is sufficiently extreme and outrageous that no person could be expected to endure it.  While Harris's actions may appear to be sexual harassment, they cannot be said to be "*egregious* sexual harassment." Wilson, 2017 WL 6397654, at *3.   Bogus has not plausibly alleged how Harris's unwanted romantic advances rose to the level of "egregious sexual harassment."

Id.  She does not explain in detail the substance of those advances to allow the court to determine whether the conduct was egregious, rising to a level harassment that would be "atrocious and utterly intolerable in a civilized society," Green Tree Acceptance, 565 So. 2d at 44, and, thus, has failed to allege facts showing entitlement to relief.  Accordingly, because Bogus has failed to allege extreme and outrageous conduct, her intentional infliction of emotional distress claim is due to be dismissed.

## VII.  Remaining Pending Claims

With the limitations of Sections II through VI in mind and based on a reading of her complaint in a light favorably to the plaintiff, the following claims survive the pending motion to dismiss and remain pending for resolution in this action:[25]

(1)  Claims asserted under Title VII claims against the City only, based on the following allegations:

    a.  Bell's and/or Harris's decision to deny the plaintiff the opportunity to earn overtime compensation.
    b.  Bell's and/or Harris's decision to transfer the plaintiff from the Mayor's security detail either because of her interracial relationship with Deputy Chief Tubbs or due to her pregnancy.
    c.  Bell's and/or Harris's creation of a sexually hostile work environment.

---

[25]    The court's identification of the claims alleged in Bogus's complaint should not be read to conclude that the court holds that Bogus has plausibly alleged each claim in a sufficient manner.  The defendants have not moved for relief under Rule 12(b)(6) for the claims identified in this section.

d. Bell's and/or Harris's retaliation against the plaintiff because she complained during the Beam investigation that Harris made unwanted romantic advances to her.

e. Harris's retaliation for plaintiff's complaint to him that she was being discriminatorily denied the opportunity to earn overtime.

f. Irwin's decision to deny Bogus a shift accommodation due to her prior interracial relationship with Tubbs and the birth of her bi-racial child.

g. Irwin's harassment and creation of a racially hostile work environment because of Bogus's race and prior interracial relationship with Tubbs.

h. Irwin's creation of a racially and sexually hostile work environment in retaliation for plaintiff having previously filed an EEOC charge.

(2) Claims under 42 U.S.C. § 1983 brought against Irwin in his individual capacity based on:

a. Irwin's retaliation against Bogus in violation of the First Amendment for reporting misconduct that she observed occurring within the City.

b. Irwin's decision to grant accommodations to other employees but not to Bogus in violation of the Fourteenth Amendment Equal Protection Clause.

c. Irwin's decision to exclude Bogus (1) from receiving reports and (2) from the supervisor's email list, while including all other supervisors, in violation of the Fourteenth Amendment Equal Protection Clause.

(3) Claims under 42 U.S.C. § 1981 of race discrimination in contract brought against the City, and Harris, Bell, and Irwin in their individual capacities.

## CONCLUSION

The defendants' Motion to Dismiss, or, in the Alternative, Motion for More Definite Statement is GRANTED IN PART and DENIED IN PART. The Motion to Dismiss is GRANTED in so far as the following claims are DISMISSED WITH PREJUDICE:

- Any claim brought against Birmingham Police Department as an entity apart from the City.
- Any individual and official capacity claims brought against Harris, Bell, and Irwin under Title VII.
- Any discrete Title VII claim accruing before September 22, 2014, and between March 31, 2015, and July 23, 2015.
- Any claim under 42 U.S.C. § 1983 brought against Harris, Bell, and Irwin in their official capacities.
- Any claim under 42 U.S.C. § 1983 brought against the City or Harris, Bell, and Irwin in their individual capacities for due process violations stemming from the 2014 Beam investigation, the 2015 IAD investigation, and the denial of opportunities to earn overtime compensation while on the Mayor's security detail.
- Any claim of stigmatization in violation of the Due Process Clause as enforced by 42 U.S.C. § 1983 and brought against the City and Harris, Bell, and Irwin in their individual capacities, stemming from the 2014 Beam investigation, the 2015 IAD investigation, and the denial of opportunities to earn overtime compensation while on the Mayor's security detail.
- Any claim under 42 U.S.C. § 1983 brought against the City or Harris, Bell, and Irwin in their individual capacities for equal protection violations occurring before May 19, 2015.
- Any official capacity claims brought against Harris, Bell, and Irwin under 42 U.S.C. § 1981.
- Any state law claim of intentional infliction of emotional distress brought against any of the defendants individually or collectively.
-

The Motion to Dismiss is DENIED in so far as the claims described in Section VII remain pending. Finally, the Motion for More Definite Statement is DENIED.

Bogus has fourteen (14) days from the entry of this order to file any objection to the court's characterization of the claims that remain pending in Section VII, including claims that she believes were not included or overlooked. If no objections are filed, the court and the parties will proceed on the claims identified

in Section VII, and the defendants shall file answers to the remaining claims in the complaint.

DONE this 11th day of April, 2018.

_____
T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE